Our next case is No. 23-12-16, eSimplicity, Inc. v. United States. Okay, Ms. Moses. Good morning, Your Honors, and may it please the Court, I would like to reserve three minutes for rebuttal, please. Okay. The GAO, which this Court has accorded... Why hasn't this case moved? Your Honor, this case is not moved because the Court can, if the Court were to reverse the trial court's decision, that would enable the Navy to terminate eSimplicity's contract on the basis that eSimplicity should have remained disqualified from the competition. A live controversy remains... The provision of the contract allows that determination for convenience provision? Yes, Your Honor. A live controversy remains concerning whether the Court's directive was proper as a matter of law. As the Supreme Court said in Knox, if the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot. And that is the case here. Just to level set, was there an original solicitation and then, like, what I understand is maybe an amended solicitation? Is that the right terminology I should be using? Yes, Your Honor. The Navy amended the solicitation after the Court enjoined the Navy from awarding the contract. And on what date did the Navy amend the solicitation? Court's indulgence, Your Honor. Was that November of 2022? Yes. Are you telling us that the government wants to terminate this current contract with eSimplicity? The Navy wants to exercise the option to terminate the contract. I understand what that means. I'm lost. Does it have this deep desire to kill the current contract, to terminate it? Please let us terminate it. Please give us the chance to terminate it, Federal Circuit. Is that where we are right now? Or is it the, hey, you know, we want to keep our options. We want all our options. And one of the options is maybe terminating it, maybe keep going with it. But just give us the option, Federal Circuit. Which one is it? It's more of the former, Your Honor. They do want to kill off the contract. I wouldn't use the language kill, perhaps, but the Navy believes that it followed the law when it disqualified eSimplicity's proposal. Right, but is there a declaration or something that indicates, okay, the Navy wants to terminate this contract for convenience so it can get away from eSimplicity? We don't have a declaration from the Navy, but DOJ counsels conversations with the Navy because we did ask. And the representations I've made today are consistent with our conversations. Well, yeah, but your representations are less than clear. Would the Navy, does the Navy intend to terminate this contract if it wins on appeal? It very well may. There are no guarantees, Your Honor, because what the Navy has to do is, we don't even know when the court renders a decision. The Navy will have to look at all the optics at that time. eSimplicity is currently performing, I believe they're on year two of a five-year ordering period. So there are a lot of factors that the Navy is going to weigh. But the Navy has a right, if the court reverses the trial court's decision, to exercise that option. Well, is it dissatisfied with eSimplicity's performance? I am not certain, Your Honor. They have not indicated that to me, but I did not inquire about that. A lot of our conversations are mostly about that. In the second solicitation, they had the ability to select somebody else other than eSimplicity, right? Yes, certainly. And they chose eSimplicity. It sounds as though the only reason they might terminate the contract is to preserve the ability to get a ruling on this issue of law, which you say has been around for a decade. Two decades, Your Honor, yes. I would not agree with that characterization. Yes, the Navy could have chosen another offeror. But the Navy was essentially compelled to allow eSimplicity into the competition. It wasn't compelled to select them to perform the contract. Right. And what the Navy wants the opportunity to do is to choose from offerors who followed the rules, those who submitted their proposals on time as the FAR requires. That is what the Navy wants to do. To choose from the offerors who followed the rules. But it sounds like some of your concerns are with respect to what I'm going to call the original proposal or solicitation, less so the amended solicitation. Is that right? It's not so much about the solicitation terms itself as much as the Navy's position that eSimplicity should have remained disqualified. They should not have ever been part of the competition. They were rightfully disqualified. Is part of your argument against mootness that somehow this issue would evade review? Yes. What's your best argument in that regard? This case is nearly identical to NICA Tech, also a big protest appeal. In NICA Tech, the government appealed the trial court's order of a stay of the procurement. And by the time this court heard the appeal, the stay had ended, the protest was completed, and NICA Tech did not even participate in the appeal. This court found that the exception to the mootness doctrine applied because it was a type of issue that was capable of repetition, yet evading review. And reached a conclusion on the question of statutory interpretation in that case. That's pretty much this case. This is what we have here, and that's what we're asking for. Okay. Unless my colleagues have further questions on mootness, let's turn to the merits. I am baffled. You say that this issue has been around for two decades. It could be solved by an amendment to the FAR making clear your position that this second exception doesn't apply to electronic submissions. Why has that not happened if this is so important? Your Honor, I don't have the answer to why the FAR counsel hasn't acted on this. Even the trial court itself recognized, in its opinion, at appendix page 12 and footnote 12, that either the Supreme Court or this court, or certainly the FAR counsel, essentially that's all we have at this point in terms of a final resolution on this. And that's why we're here, to ask for a final resolution on this legal question. Indeed, the trial court did ignore critical distinguishing language between the government control exception and the electronic commerce exception. As GAO has held, by its explicit terms, the electronic commerce exception covers electronic submission methods, like email, and the more general government control exception covers all non-electronic submission methods. But it doesn't say that. It doesn't say it's limited to paper submissions. It doesn't say that it's limited, but the specific should control over the general. And in terms of the regulatory history, what it shows is an involvement from the FAR having numerous exceptions related to paper submissions. And then over time, what was left was the e-commerce exception, the electronic commerce exception, and the government control exception, and the only proposal received exception as well. And it's eminently reasonable that the paper submission methods were collapsed into the government control exception. It is not reasonable that the FAR counsel would have referred to something capable of receiving email, like a server, as both an infrastructure and an installation. It's also eminently reasonable that a government installation refers to a physical building or a room or an office, and certainly a military installation, whereas a government infrastructure refers to a computer infrastructure, like a server. And we can glean that from the surrounding regulatory text. The trial court impermissibly expanded the government control exception to apply to email proposals when the electronic commerce exception is specifically tailored to address such methods. And such critical distinguishing language should be given effect. The electronic commerce exception covers this exact scenario. If eSimplicity had filed, submitted, excuse me, its proposal one business day prior to the deadline, there would have been time to resolve any technical errors that obviously arose with their email, and ultimately, eSimplicity would have been able to invoke the e-commerce exception to prevent disqualification. Unless the court has any further questions about the government control exception versus the e-commerce exception, I'll move on to my next point. A file size limit is not evaluation criterion. A file size limit is a factor concerning the mechanics of submission. The FAR does not require procuring agencies to include a file size limit in the solicitation, and neither FAR 15.304 nor FAR .305 applies. Both concern proposal evaluation. Indeed, FAR 15.305 states, proposal evaluation is an assessment of the proposal and the offeror's ability to perform the prospective contract successfully. Here, there was no... Help me understand. I'm a little confused as to the relationship between this argument about whether it's a solicitation limitation and the notion that the government control exception applies. If the government control exception applies, why does it make a difference whether it's a provision of the solicitation or not? It actually did get to the government server, and then it was sent back, right? It reached DISA server. DISA provides network support services for the Navy in this case. So that would be within the government control exception, wouldn't it? No, because the government did not have control. If we were to assume that the government control exception applies, if I understand your question correctly, E-Simplicity would not have been able to meet the criteria. And why is that? Because there is no evidence in the record that the government had control over E-Simplicity's proposal. The data that was, if you will... When it reached this server, why wasn't that within the government control? I'm not really understanding what's going on here. Your Honor, honestly, I must say I'm not a technical expert like E-Simplicity, but the way I understand it is that the way that information is sent from sender to receiver is that when the server first gets it, maybe to use this as an analogy, it's like an envelope. So the server first looks at the information on the envelope. Who is this going to? Who is the addressing? Who is this from? Is there anything that on the outside indicates that something may be wrong with this, some kind of security risk? So you're saying the government had control over the envelope, but not the contents? Or at least the information that's included on the envelope, but not the contents. That data was not properly conveyed across the board. It was no successful handoff. I think that's what... I'm not understanding that. Under the government control exception, if it reaches this server, that would be sufficient, wouldn't it? And it did reach the server. Well, the government control exception requires receipt and control. And perhaps a way to... The FAR doesn't define control. But one definition possibly could be that it's irrevocably... Like the sender cannot... The government has it in its possession. For the data in their possession, they just chose to, because of the size limitation, to send it back. But it's not within our... We don't have control over it. It's rejected.  But the government's making the decision to reject it. The reason for the rejection doesn't... My understanding is that the reason for the rejection doesn't matter. What's required is that in order to invoke the government control exception, if it were to apply, which we don't agree that it does, given how hard it is to kind of figure out how... What do we consider control of an email? It makes a lot more sense in the paper world where someone would come to an agency or a military installation and the government control exception accounts for the fact that someone responsible at this agency received it, they stamped it, they have it. And somehow, let's say, it got lost or something. We know that it's in our possession. We have it. The offeror has left the building. They no longer have access to it. With email, it's just incompatible. It's incompatible to try to apply the government control exception. So are you contending that the government control exception applies differently to paper submissions and electronic submissions? Is that what you're indicating? Your Honor, we're saying that they each apply depending on the method of submission. So we're just talking paper versus non-paper. If it's electronic, Your Honor may have said this, if it's an electronic submission, only the electronic commerce exception applies. Okay, I understand that point. But assuming hypothetically that we reject that and say that the government control exception does apply to electronic submissions, I don't quite understand why it's necessary for them to win this point about whether the size limitation is a condition of the solicitation or not because isn't it sufficient under the government control exception that the government got the email? Whether they sent it back or not seems to be irrelevant to the question of whether it had possession and control over it. The file size limit issue would not be dispositive if the court were to conclude that the government control exception applies to electronic submissions and that e-Simplicity met those exceptions.  All right. Thank you. We'll give you two minutes to rebuttal. Thank you. Mr. Bally? Good morning, Your Honors, and may it please the Court. My name is Eric Bally and I represent the appellee e-Simplicity. Your Honors, as you correctly are concerned with, e-Simplicity's case is moot. The issues on appeal are now academic due to the actions the government took on remand. And I think it's important in this respect, Your Honors, to read the Court's order on remand carefully here. The Navy was ordered only to reconsider its decision that e-Simplicity's proposal was untimely in light of the unstated evaluation criterion holding. And in the event that the Navy's reconsideration of that decision does not lead to the acceptance of e-Simplicity's proposal, the Navy is ordered to consider whether the elements of the government control exception render e-Simplicity's proposal timely. The Navy was not enjoined to accept e-Simplicity's proposal. It was not enjoined to amend the solicitation and give e-Simplicity another chance to resubmit. And I think what they're saying is maybe they would terminate for convenience so they could vindicate their legal theory. Your Honor, and I think that's a very concerning statement, but it also presents a significant concern with respect to mootness. If the government's interpretation of the justiciability of this case is that the case is not moot because e-Simplicity holds the contract, what is the court to do with the seven-month intervening period where the solicitation was out there and no one held the contract? I'm aware of no principle of mootness that allows a case to fluctuate between live and moot and then live again based on a decision that the government voluntarily makes seven months after filing its notice of appeal. And that's when this decision was made. Your Honor, Judge Cunningham, the solicitation was released, the amended solicitation, November 22, 2022. That was one day before the government even filed its notice of appeal. And seven months later, on June 29, 2023, e-Simplicity was awarded the contract. Under the government's primary theory of why this case is in moot, there's a seven-month moot period right there in the middle of this case. At any point in time, this court could have ordered briefing. The government asked for three extensions to the briefing deadline during that same period of time. So, Your Honor, this case is moot regardless of whether the government awarded the contract to e-Simplicity under a separate solicitation seven months after noticing its appeal. Your Honor, for the same reason, the capable of repetition evading review doctrine does not apply here. The Supreme Court has held that that doctrine applies in exceptional circumstances, and there is nothing exceptional about this case. As the government just conceded, this litigation has been going on for the past two decades. And the government has actually been playing both sides of this issue in front of the trial court, most recently in 2022, when it argued the government control exception applies to an e-mail proposal accepted by the DISA server, the same server at issue here. But the case does not apply under NICA or NICA Technologies because that case involved in an exceptional circumstance. The challenge in that case was to a statutorily required 100-day stay of performance during which GAO needs to issue a decision on a bid protest. GAO cannot exceed that 100-day deadline. Here, there's no statutorily imposed constraint on the government, and the government has put forth nothing in these briefs or anywhere else in the record to say why it exigently needed to award this contract, why it needed to move forward and amend the solicitation, let alone why it needed to award the contract to e-Simplicity, which was the best value offer here. Your Honor, I'm very concerned by the government's statements up here that they intend to terminate e-Simplicity, and I feel that that— I don't think they went that far. They said they liked the opportunity to do that. Yes, Your Honor. And concerned by that as well, I think not only is this case moot, but this Court should dismiss this appeal as moot to send a message to the government that it should not be playing perhaps jurisdictional games to keep its appeals alive with contractors and people, like e-Simplicity's approximately 40 employees on this work, whose livelihoods depend on this contract, and for the past 433 days have been operating under the threat of termination only if this Court will reverse the trial court's decision. Okay, turning to the merits, what's the answer to my question that if we assume hypothetically that the government control exception applies, why does it matter whether the size limitation was a feature of the solicitation or not? Your Honor, I think if you determine that the government control exception may apply to e-mail proposals, that is enough to affirm the case, and there's no investigation necessary. I mean, the bid reached a government server, right? But it was then rejected and sent back. Yes, Your Honor. And to correct, I believe, maybe an omission or a misstatement up here by the government, the proposal not only reached the DISA server, it was then under the government's control there and passed on to the, quote, destination server. That's Appendix 201. That's the agency's, the Navy's server. The destination is the Navy in this case. And then it was sent back. And then it was bounced back for being too large. But, Your Honor, the question in this case is only whether, as a matter of regulatory interpretation, the government control exception may apply to e-mail proposals. And once this court, interpreting the plain language of that exception, says it may apply to e-mail proposals, the government was ordered on remand to go back and determine whether the elements of the government control exception render e-simplicity's proposal timely. It was remanded for that exact investigation to say, was it received? Was it under the government's control? And did it reach the correct destination? If you determine that the legal issue applies, that the government control exception may apply, there's no remand that is necessary because on remand, you're affirming the correctness of the trial court's decision and its remand order. But then on remand, the government took a voluntary action. It did not comply with that remand order to perform an investigation. It rather went back and amended the solicitation and allowed any and all offers to submit revised proposals, including e-simplicity. So all that Your Honors need to do in this case is determine that the government control exception and the regulation may apply to e-mail proposals. And that's the end of the case. You can affirm the trial court's decision on that holding. And the issues that then took place after that are all the government's voluntary actions on remand. The government's whole idea at that point that it was compelled to do something is no longer a viable theory of this case. In fact, we don't believe that's a viable theory of this case anyway because the government was only compelled to reconsider and consider two issues respectively. And it chose to do something entirely different. Your Honor, the government control exception by its plain language applies to any offer. And that's clear from the plain text of this regulation. And nothing about the electronic commerce exception, a separate exception, does anything to modify that. FAR 52-212-1F2I begins, any offer, it then continues, is that received at the government office designated in the solicitation after the exact time specified for receipt of offers is late and will not be considered unless it, that refers back to any offer, is received before a word is made. That's condition number one. The contracting officer determines that accepting the late offer would not unduly delay the acquisition. That's condition number two. And then the regulation includes an and and an em dash. And the and and the em dash lead into three additional exceptions, conditions for exceptions, separated by the word or. In the relevant exception here, after that 52-212-F2I, it says, there is acceptable evidence to establish that it was received at the government installation designated for receipt of offers. And that it refers back to any offer in the preceding text of the regulation. By its plain terms, the government control exception applies to any offer. The government wants this court, because of confusion between GAO and divergent trial court decisions for the past 20 years, to insert into this exception words that say, if it was transmitted through a means other than an electronic commerce method authorized by the solicitation, and then the rest of the exception in B. But that's not what this exception says. There is no part of the electronic commerce exception that changes the plain text of the government control exception in B. And no part of the regulation is rendered superfluous by reading this exception to apply to emailed as well as hand-delivered or paper proposals. Your Honors, if you have additional questions about the government control exception and its applicability, I'm happy to answer them. Okay. I don't see nothing. Thank you. Thank you, Your Honors. Ms. Moses? I want to clarify for the court that the Navy's position can hardly be characterized as voluntary. The court's injunction effectively demanded that the Navy create an opportunity for e-simplicity to compete for an award. The court enjoined the Navy from making an award and remanded the case for 60 days to reconsider whether e-simplicity's proposal was timely in light of the court's conclusion that the Navy's decision involved an application of unstated evaluation criterion. That was the first part of the order. Second, if that reconsideration did not lead to acceptance of e-simplicity's proposal, then the court further ordered the Navy to consider whether the government control exception would render e-simplicity's proposal timely to allow an identical resubmission of the proposal. And then the last option was start the procurement from scratch. So given the very limited time that the Navy had to procure these services that were critically needed and for which no lapse in performance, they could afford no lapse in performance, the Navy did the best that it could given the very limited options it had and the very limited time frame in an attempt to comply with the trial court's directive. And a last point, Your Honor. Again, the best value should have been determined based upon the offerors who were properly within the competitive range. And just to clarify a factual point, which is reflected at appendix page 199, what the DISA tech said was that the message came into the government servers, talking about DISA server, at a time equivalent to 3.27 p.m. approximately, and queued for delivery before being bounced back. When he's talking about being queued for delivery, queued for delivery to the Navy server, that next handoff. That was never achieved. Okay, I think we're out of time. Thank you very much. Thank both counsels. Thank you, Your Honor. The case is submitted.